**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**(TRENTON VICINAGE)**

Deirdre Davidson a/k/a Deirdre Oagunju,
155 East Cliff Street
Somerville, NJ 18930
             Plaintiffs,

    v.

Cornerstone Bank
300 West Route 38
Moorestown, NJ 08057

E-Mortgage Management LLC
222 Haddon Avenue, Suite 2-A
Haddon Township, NJ 08108

E-Freedom Properties, LLC
222 Haddon Avenue, Suite 2-A
Haddon Township, NJ 08108

E- Properties, LLC
222 Haddon Avenue, Suite 2-A
Haddon Township, NJ 08108

Gregory Englesbe
222 Haddon Avenue, Suite 2-A
Haddon Township, NJ 08108

Joseph Stagnaleti
222 Haddon Avenue, Suite 2-A
Haddon Township, NJ 08108

            Defendants.

Civil Action No.

**COMPLAINT**

**I.    Introduction**

1.     This is an action for an award of attorney's fees and costs, compensatory, statutory,

treble and punitive damages, also seeking equitable, injunctive and other relief, for

Defendants' deed (conversion, "Foreclosure Rescue Scam", deed conversion, unfair or deceptive acts and practices, conspiracy and/or aiding and abetting same.

2.      Individually, jointly and/or severally, Defendants are liable to Plaintiffs for, but not limited to, the below causes of action and aforesaid remedies, for the reasons stated, which reasons are currently known, upon information and/or belief, and/or will be proven in discovery and/or at trial.

3.      At all times material, Plaintiffs here reserve the right to rely on the "Discovery Rule" and/or the Doctrine(s) of Equitable Tolling/Fraudulent Concealment, respectively.

## II.      Jurisdiction and Venue

4.      Jurisdiction in this Honorable Court is based on Jurisdiction in this Honorable Court is based on federal question conferred by 15 U.S.C §1679. Supplemental jurisdiction over state law claims is granted by 28 U.S.C. §1367.

5.      Venue lies in this District in that the events giving rise to this claim occurred here, at least one (1) Defendant resides, maintains a principal place of business, is incorporated or does business here, or the subject of this action is situated within this district.

## III.      Parties

6.      Plaintiff, Deirdre Davidson (collectively "Plaintiffs"), is an adult individual currently residing at 80 Third Street, Somerville NJ 08876.  At all times material herein, plaintiff owned and occupied as her primary residence the property located at 155 East Cliff Street, Somerville, NJ 08876 ("Property" or "home").

7.      Defendant, Gregory Englesbe ("Englesbe"), is an adult individual conducting business under the guise of three (3) limited liability New Jersey corporations over which he exercises complete dominion and control to effect foreclosure rescue scams and all of

which are noted herein as separate defendants. Englesbe is CEO of all three such corporations was CEO of same at all times material herein.

8.      Defendant E-Mortgage Management LLC ("E-Mortgage") is a mortgage broker is a duly incorporated corporation under and by virtue of the laws of the State of New Jersey, maintaining a principle place of business at the above captioned address. At all times material E-Mortgage acted as broker for the 1st position mortgage loan made to plaintiffs and as co-broker for the 2nd position mortgage loan made to plaintiffs as described herein.

9.      Defendant E-Properties LLC ("E-Properties") is a duly incorporated corporation under and by virtue of the laws of the State of New Jersey, maintaining a principle place of business at the above captioned address. At all times material Englesbe employed the E-Properties entity to purchase properties from homeowners like plaintiff targeted by his foreclosure rescue scam.

10.     Defendant E-Freedom Properties LLC ("E-Freedom") is a duly incorporated corporation under and by virtue of the laws of the State of New Jersey, maintaining a principle place of business at the above captioned address. At all times material Englesbe employed the E-Freedom entity to ostensibly hold as escrow agent equity extracted from properties belonging to homeowners like plaintiff targeted by his foreclosure rescue scam.

11.     Defendant Cornerstone Bank ("Cornerstone") is a corporation engaged in the business of lending in the State of New Jersey with principal offices at the above captioned address.

12.     Defendant, Gregory Englesbe ("Englesbe"), is an adult individual employed by

3

defendant E-Mortgage at the above captioned address.

13.    Defendants excluding Cornerstone Bank are hereafter sometimes referred to collectively as "the Englesbe defendants".

14.    At all times material, Defendants were acting individually, within the course and scope of their authority and employment, and/or through their agents, servants, work-persons, and/or employees, respectively.

15.    At all times material, Defendants acted individually and/or on behalf of each other as agents, servants, work-persons, alter egos, and/or employees thereof.

16.    Defendants are liable to Plaintiffs, directly, indirectly, contractually, expressly, implicitly, as a matter of law and/or vicariously, including but not limited to liability via a third-party beneficiary relationship, and/or via conspiring and/or aiding and abetting.

**IV.    Facts**

17.    In or around June, 2007, Plaintiff received a an initial contact from E-Mortgage Management LLC in the form of a flyer advertising credit repair and mortgage assistance to distressed homeowners.

18.    Plaintiff contacted E-Mortgage and spoke to defendant Stagnaleti.

19.    Stagnaleti explained to plaintiff that he would be her "handler" at E-Mortgage with regards to their program to save plaintiff's home.

20.    Plaintiff explained to Stagnaleti that she had recently lost her job.

21.    Stagnaleti explained to plaintiff that the E-Mortgage program would assist her as follows:

        a.    E-Mortgage would "hold" the house for plaintiff;

4

    b.  Plaintiff would give E-Mortgage twelve (12) post dated checks to pay lease payments over 1 year while plaintiff secured another full time job;

    c.  After plaintiff gained full time employment, E-Mortgage would attempt to secure her a loan with a lower monthly payment and transfer the home back to her.

22.    Approximately three (3) weeks later, Stagnaleti called plaintiff to advise her that she would need to come to E-Mortgage's office in Haddon Township, New Jersey to sign documents.

23.    On or about October 31, 2007, plaintiff arrived at E-Mortgage's offices and met with three (3) individuals there:

    a.  principal of defendants E-Mortgage and E-Properties, Greg Englesbe;

    b.  a male title agent from Brightman Title;

    c.  an unknown male associated with Greg Englesbe.

24.    At the aforesaid document signing, plaintiff's only expectation was that she would sign a deed over to E-Mortgage.

25.    At the aforesaid document signing, plaintiff was presented with and signed the following documents which she had never reviewed prior thereto:

    a.  A sale agreement selling her property to E-Properties;

    b.  A Net Lease agreement agreeing to pay monthly rent for a twelve (12) month term in which all maintenance, repair, utility, and insurance responsibilities are borne by plaintiff as tenant;

    c.   A "disclosure" advising plaintiff she is entering a "Foreclosure and Debt Relief Program" to allow plaintiff to repurchase the property at 75% of its value within 12 months;

    d.   A "Notice to Title Company" agreeing that $47,752 would be paid to defendant E-Freedom form the loan proceeds representing equity extracted from her property.

26.    Plaintiff was informed that her rent payments would come from the loan proceeds.

27.    On or about April, 2008, plaintiff found a part time job in New York City and called Stagnaleti to advise him of this.

28.    Upon being so informed, Stagnaleti advised plaintiff that she would need a full time job to get the amount of monthly salary sufficient to qualify for a loan to repurchase the property.

29.    On or about May 1, 2008, plaintiff received a letter from a Lisa Atkins of defendant E-Properties discussing repair of her credit with a company called YCS.

30.    Plaintiff spoke thereafter with the aforesaid Lisa Atkins and advised her that she had not been working on credit repair with anyone and had not heard from a company called YCS.

31.    On or about September, 2008, plaintiff found a full time job and called Stagnaleti to advise him of this.

32.    Plaintiff did not receive any further contact from defendants until February, 2009, when defendant Englesbe contacted plaintiff by telephone to advise her she was in arrears on her rent.

33.     In March, 2009, defendant E-Properties brought suit against plaintiff to evict her from the property.

34.     In or around the same time, realtor Ileka Dingle (hereinafter "Realtor") came to the property and advised plaintiff that defendant Englesbe had asked her to place the property for sale.

35.     Upon plaintiff advising realtor that the notice of the property's sale was a complete surprise to her, realtor advised plaintiff that plaintiff was the third individual in a property owned by Englesbe who taken by surprise by the realtor's notice of the property's sale.

36.     Realtor told plaintiff that Englesbe was a "crook" and that she should retain a lawyer.

37.     The Englesbe defendants never engaged in any credit repair with or on behalf of plaintiff.

**V.      Causes of Action**

38.     Paragraphs above are incorporated by reference as if fully set forth at length herein and below.

**<u>COUNT I</u> - Credit Repair Organizations Act ("CROA")**
*(Plaintiff v. All defendants excluding Cornerstone Bank)*

39.     Plaintiff repeats and re-alleges all paragraphs above as if fully set forth herein.

40.     At all times material, Plaintiff was a "consumer" as defined by 15 U.S.C & §1679(a)(1).

41.     At all times material, the Englesbe defendants, individually, and together with each other constituted a "credit repair organization" as defined by 15 U.S.C §1679(a)(3).

42.     The promise of credit repair by the Englesbe defendants was mere artifice to cloak their true intention to take plaintiff's property

43.    For the reasons before said at all times material Defendants were in violation of 15 U.S.C §1679, et seq. including but not limited to violating the "Prohibited Practices" section of the Act as follows:

    (a) "make or use any untrue or misleading representation of the services of the credit repair organization; or…"

    (b) "engage, directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

## COUNT II
### Fraud/Fraudulent Misrepresentation
*(Plaintiff v. All defendants excluding Cornerstone Bank)*

44.    Plaintiff incorporates all facts and allegations set forth elsewhere in this Complaint.

45.    The Defendants made the following representations expressly or impliedly to the plaintiff:

    (a) Stagnaleti, individually and on behalf of Englesbe and E-Mortgage, represented that he would help save plaintiff's home by placing it with an investor, repair her credit, and then qualifying and brokering her a new mortgage loan to repurchase her home;

    (b) Stagnaleti, individually and on behalf of Englesbe and E-Mortgage, promised that equity taken from the property would be held in escrow after the Loan Transaction;

    (c) E-Properties represented that it was providing a credit repair program to plaintiff;

    (d) E-Freedom represented that it was offering credit repair and foreclosure relief to plaintiff;

(e) Stagnaleti, individually and on behalf of Englesbe and E-Mortgage represented that they did not want to take plaintiff's home.

46.     The representations and/omissions of Defendants in the prior paragraph were known or should have been known to those defendants to be false when made, were material in nature, and were made with the intent to deceive and defraud the plaintiff into selling her home so that said defendants could strip tens of thousands from the home's equity.

47.     Defendants knew or should have known that they were funding a scheme to cheat plaintiff out of her equity in the home rather than rescue it them from foreclosure.

48.     The plaintiff justifiably relied on Defendants' misrepresentations before, during, and after the Loan transactions that her home was going to be saved by the escrow of funds for lease back, down payment, and credit repair.

49.     As a result of the aforementioned conduct, the plaintiff suffered the damages outlined above and below in addition to extreme mental anguish, frustration, humiliation, embarrassment and stress.

50.     The defendants' actions as hereinbefore described, including but not limited to using a fraudulent lease back/credit repair scheme to take plaintiffs' home, were reckless, outrageous, willful, and wanton, thereby justifying the imposition of exemplary, treble and/or punitive damages.


## COUNT III - Conspiracy and Aiding/Abetting

51.     Plaintiff repeats and re-alleges all paragraphs above as if fully set forth herein.

52.     At all times material, Defendants acted conspiratorially, in their design in concert, and/or aiding and abetting each other to perpetrate the harms and/or misconduct aforesaid.

53.     The agreement among defendants constituted a combination of two or more persons acting with common purpose to do unlawful acts (use the pretext of a sale/lease back to investor combined with a credit repair scheme to steal property through a foreclosure rescue loan scam) and to do lawful acts (arrange purchase mortgage loans) by unlawful means (fraudulently and in violation of law as set forth in the foregoing Counts).

54.     Defendants committed overt acts in pursuance of the common purpose as set forth above. Upon information and belief, the overt acts included:

> (a) Defendants took over $47,000 from the home's equity and provided no credit or financial services to plaintiff in return to assist her in gaining a new mortgage loan to regain her home;

> (b) Defendants promised credit repair and financing assistance to lull plaintiff into a false sense of security that she would be able to repurchase her home without seeking such assistance independent of defendants;

> (c) Defendants used the pretext of foreclosure rescue as cover for their scheme to steal plaintiff's property and steal cash from the property's equity;

> (d) Defendants knowingly failed to create an account to escrow cash funds from the home's equity for plaintiff's benefit;

55.     Defendants had knowledge of their respective overt acts, omissions, evasions, and concealments, which have contributed to plaintiff's damages and losses.

56.     Plaintiff was damaged by the illegal agreement among the Defendants in the principal amount of the loan less any existing valid liens on the home.

57.     At all times material, as explained more fully above, Plaintiffs justifiably and detrimentally relied upon the material fraud and fraudulent misrepresentations of Defendants, which resulted in the above damages.

## COUNT IV - Equitable Relief
### *(Defendant Cornerstone)*

58.     Plaintiff incorporates by reference all prior paragraphs as if set forth at length herein.

59.     Based on facts alleged herein, the intent of the parties in engaging in the sale/leaseback transaction underlying the loan was for plaintiff to give a mortgage on the property in exchange for the following services of defendants:

> (a) Defendants Staganleti, Englesbe, E-Mortgage, E-Properties, and E-Freedom to  secure an investor willing to purchase the property to rescue it from foreclosure and lease back the property to plaintiff subject to the buy back Disclosure forms;

> (b) Defendants Staganleti, Englesbe, E-Mortgage, E-Properties, and E-Freedom to secure credit repair and financing assistance to enable plaintiff to repurchase her property.

60.     The aforesaid intent of the parties created an equitable mortgage granted by plaintiff in favor of Defendants Staganleti, Englesbe, E-Mortgage, E-Properties, and E-Freedom in a foreclosure rescue transaction rather than a traditional sale of the property.

61.     The following facts from and surround the transactions create the aforesaid equitable mortgage:

> (a) Plaintiff's existing mortgage loan was delinquent and in foreclosure status;

(b) E-Freedom was paid $47,000 for its foreclosure rescue services which was subsequently shared by Englesbe, his corporate entities, and individual co-conspirator defendants;

(c) Plaintiff would continue to occupy the property under a lease/purchase agreement between Plaintiff and E-Freedom to take effect immediately proceeding the sale;

(d) Plaintiff as buyer would continue to pay liability insurance associated with the property as an owner would;

(e) Under the lease/purchase agreement, Plaintiff as buyer would continue to perform all repairs and maintenance associated with the property as an owner would;

(f) There was no prior listing of the property or involvement of a real estate agent in the sale;

62.     Based on the above facts, E-Freedom was a straw purchaser whose role was to facilitate a foreclosure rescue transaction.

63.     Cornerstone was on notice by its own HUD1 and other documents accompanying the transaction that it was funding a foreclosure rescue transaction rather than a simple sale of the property in that Cornerstone knew at the time of closing that:

(a) Plaintiff's existing mortgage loan was delinquent and in foreclosure status;

(b) Plaintiff would continue to occupy the property under a lease/purchase agreement between Plaintiff and E-Freedom to take effect immediately proceeding the sale;

(c) Plaintiff as buyer would continue to pay liability insurance associated with the property as an owner would;

(d) Under the lease/purchase agreement, Plaintiff as buyer would continue to perform all repairs and maintenance associated with the property as an owner would;

(e) There was no prior listing of the property or involvement of a real estate agent in the sale;

  (f) Upon information and belief, there was a charge to Plaintiff listed on the HUD1 payable to Truck/Samantha Associates for their services in arranging the foreclosure rescue transaction;

64. Due to the failure of the defendants to arrange a legitimate rescue loan or sale transaction rather than engaging in a fraud to steal the home's equity, then to the extent that any lien exists arising from this transaction, it is equitably a lien solely for the amount of the mortgage and tax and other liens pre-existing the loan and is a refinancing loan between Cornerstone and plaintiff.

### <u>COUNT VI</u> – Truth-in-Lending Act ("TILA")/Home Ownership and Equity Protection Act ("HOEPA")
*(Plaintiff v. Cornerstone)*

65. Plaintiff incorporates by reference all prior paragraphs as if set forth at length herein.

66. At all times material, Defendant, in the ordinary course of business, extended and/or arranged for the extension of consumer credit and/or offered to extend or arrange for the extension of such credit.

67. The Loan was an extension of a consumer line of credit secured by a mortgage on the residence and therefore subject to Plaintiff's right of rescission, and/or statutory and/or actual damages described by 15 U.S.C. §1635 and 12 C.F.R. §226.23.

68. In said loan transaction, Plaintiff did not receive the disclosures required by the Truth-In-Lending A ct ("TILA"), 15 U.S.C . §1601, et. seq., and Regulation Z of the Federal Reserve Board ("Regulation Z"), 12 C. F.R §226.1 et seq.

69.     By failing to deliver any loan documents other than a partial HUD1 to plaintiff at the closing, Defendant Cornerstone failed to deliver all "material" disclosures required by TILA and Regulation Z, including but not limited to:

        a.  Failing to properly and accurately disclose the " amount financed,"   described in and in violation of Regulation Z §226.18(b) and 15 U.S.C. §1638(a)(2)(A);

        b.  Failing to clearly and accurately disclose the " finance charge" described in and in violation of Regulation Z §226.4 and 15 U.S.C. §1638(a)(3);

        c.  Failing to clearly and accurately disclose the " annual percentage rate," described in and in violation of Regular Z § 226.18(e) and 15 U.S.C. §1638(a)(4);

        d.  Failing to comply with the special disclosure requirements of Regulation Z §226.32;

        e.  Failing to timely provide each Plaintiff with two (2) copies of a Notice of his/her Rights to Rescind the Transaction and/or one (1) copy each of the form Disclosure pursuant to TILA and/or HOEPA.

        i.  Due to the violations of TILA and Regulation Z, Plaintiff has an ongoing right to rescind the transaction, and/or right to recoupment, statutory and actual damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests this Honorable Court enter judgment in their favor and against Defendants, individually, jointly and/or severally, in an amount in excess of seventy-five thousand dollars ($75,000), plus such other and further relief as this Honorable Court deems necessary and just, and to Order the following relief:

A.  Rescission of the loan transaction, including a declaration that Plaintiff is are not liable for any finance charges or other charges imposed at closing of the transaction;

B.  Termination of any security interest in the home created under the Loan transaction between E-Properties and Cornerstone;

C.  Declaration by the Court that deed in favor of defendant E-Properties is void and title is revested in plaintiff;

D.  Declaration that an equitable Mortgage exists between plaintiff and Cornerstone securing an amount of principal to be determined by litigation.

E.  Actual damages in the amount of the equity in the home lost by plaintiff;

F.  Punitive damages;

G.  Reasonable Attorneys fees, expenses, and costs of suit.

**<u>JURY PRAYER</u>**

Plaintiff demands trial by jury.

Dated: June 2, 2010

<u>/s/ Matthew Weisberg, Esquire</u>
WEISBERG LAW, P.C.
Pa. Id. No. 85570
7 S. Morton Ave.
Morton, PA 19070
(610) 690-0801
Attorneys for Plaintiff