```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| DEIRDRE DAVIDSON, | Civil Action |
| Plaintiff, | No. 10-2825(NLH) |
| v. | **OPINION** |
| CORNERSTONE BANK, et al., | |
| Defendants. | |

**APPEARANCES:**
MATTHEW BENJAMIN WEISBERG
PROCHNIAK WEISBERG, PC
7 SOUTH MORTON AVENUE
MORTON, PA 19070
*Attorney for Plaintiff Deirdre Davidson*

JOSEPH H. BLUM
DEEB, PETRAKIS, BLUM & MURPHY
103 Carnegie Center
Suite 300
Princeton, NJ 08540
*Attorney for Defendant Cornerstone Bank*

TRACEY GOLDSTEIN
FEINSTEIN RAISS KELIN & BOOKER LLC
100 EXECUTIVE DRIVE
SUITE 360
WEST ORANGE, NJ 07052
*Attorney for Defendants E Mortgage Management LLC, E Freedom Properties, LLC, E Properties, LLC, Gregory Englesbe and Joseph Spagnoletti*

**HILLMAN, District Judge**

This matter comes before the Court upon the Motion of Defendant Cornerstone Bank (hereinafter "Cornerstone") to Dismiss Plaintiff's Complaint [Doc. 19] and Defendants' Motions to Dismiss Plaintiff's Cross-claim [Docs. 31 & 32]. For the reasons expressed below, Defendant Cornerstone's Motion to Dismiss will be granted in part and denied in part and Defendants' Motions to

Dismiss Plaintiff's Cross-claim will be granted.

**I.   JURISDICTION**

Plaintiff has alleged several violations of federal and state law.  This Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331, and may exercise supplemental jurisdiction over Plaintiff's related state law claims under 28 U.S.C. § 1367.

**II.   BACKGROUND**[1]

Sometime in June 2007, Plaintiff, Deirdre Davidson,[2] received a mail flyer from E Mortgage Management, LLC[3] (hereinafter "E Mortgage") advertising credit repair and mortgage assistance for distressed homeowners.  Hoping to take advantage of those services because her existing mortgage loan was delinquent and in foreclosure, Plaintiff contacted E Mortgage and spoke with Joseph Spagnoletti[4] (hereinafter "Spagnoletti").  Plaintiff, whom recently lost her job, learned Spagnoletti would be her "handler" at E Mortgage and its program would save her

---

[1]   Given that the present matters before the Court are Defendant Cornerstone's Motion to Dismiss and Defendants' Motions to Dismiss Plaintiff's Cross-claim, the operative facts are culled from Plaintiff's Complaint and Cross-claim, accepted as true, and considered in a light most favorable to the nonmoving party. *See* <u>Evancho v. Fisher</u>, 423 F.3d 347, 350 (3d Cir. 2005).

[2]   a/k/a Deirdre Oagunju

[3]   Incorrectly pled as E-Mortgage Management, LLC.

[4]   Incorrectly pled as Joseph Stagnaletti.

home from foreclosure.  According to Spagnoletti, E Mortgage would "hold" Plaintiff's house while she continued to occupy the property.  In return, Plaintiff would make twelve lease payments, with twelve postdated checks, to E Mortgage while she tried to secure full time employment.  Once she obtained full time employment, E Mortgage would attempt to secure Plaintiff a loan with lower monthly payments and transfer the home back to her.

Several weeks later, on October 31, 2007, Plaintiff arrived at E Mortgage's office to sign the deed of her house over to E Mortgage.  To her surprise, Plaintiff was presented with several documents she had never previously seen or reviewed.  Plaintiff signed the documents, which included (1) a sale agreement selling her property to E Properties, LLC[5] (hereinafter "E Properties"), (2) a net lease agreement that required Plaintiff, as tenant, to pay rent for twelve months and to assume all maintenance, repair, utility and insurance responsibilities for the property, (3) a "disclosure" advising Plaintiff she entered into a "foreclosure and debt relief program" that would permit her to repurchase the home, within twelve months, at 75 percent of its value and (4) a "Notice to Title Company" agreeing that E Freedom Properties, LLC[6] (hereinafter "E Freedom") would receive $47,752.00 from the loan proceeds, this amount represented the equity extracted from

---

[5]   Incorrectly pled as E-Properties, LLC.

[6]   Incorrectly pled as E-Freedom Properties, LLC.

3

Plaintiff's property.[7]  Plaintiff was also told her rent payments would come from the loan proceeds and that any equity from her property would be held in escrow.[8]

In May 2008, Plaintiff received a letter from a representative of E Properties discussing repair of her credit with a company YCS.  Sometime thereafter, Plaintiff spoke with the representative from E Properties and told her that she had not heard from YCS and had not been working on credit repair with anyone.

In September 2008, Plaintiff informed Spagnoletti that she had acquired full time employment.  After informing Spagnoletti of this news, Plaintiff did not receive any contact from Defendants until February 2009.  That month Gregory Englesbe (hereinafter "Englesbe"), principal of E Mortgage and E

---

[7] In the "Facts" section of her Complaint Plaintiff alleged that she sold her property to E Properties and signed a net lease agreement agreeing to pay twelve months rent. (Doc. 1, Compl. ¶ 25).  In Count IV of her Complaint, however, she avers that she would "continue to occupy the property under a lease/purchase agreement between Plaintiff and E-Freedom [sic]." Id. at ¶ 61.  These averments appear to be conflicting.  The lease/purchase agreement existed between either Plaintiff and E Properties or Plaintiff and E Freedom, but presumingly not both.

[8] Cornerstone's role in this transaction is not well detailed in Plaintiff's Complaint.  The only averment regarding Cornerstone is a conclusory allegation that it "was on notice by its own HUD1 and other documents accompanying the transaction" that it funded a foreclosure rescue transaction. (Doc. 1, Compl. ¶ 63).  Nowhere does Plaintiff describe Cornerstone's role or aver how its HUD 1 statement put it on notice of an alleged foreclosure rescue transaction.

Properties, told Plaintiff she was in arrears on her rent.  In March 2009, E Properties brought suit to evict Plaintiff from the property.  Plaintiff also alleges that Defendants E Mortgage, E Freedom, E Properties, Englesbe or Spagnoletti (collectively "E Defendants") never engaged in any credit repair on her behalf.

On June 2, 2010, Plaintiff commenced this suit against Defendants.  In response, Defendants E Mortgage, E Freedom, E Properties and Englesbe answered the Complaint and raised several counterclaims [Doc. 11].  Defendant Cornerstone, on August 17, 2010, filed a Motion to Dismiss the Complaint.  Several weeks later, E Defendants amended their answer and counterclaim [Doc. 28].  Shortly thereafter, Plaintiff answered the counterclaim and filed a Cross-claim against all Defendants [Doc. 30].  Defendants subsequently moved to dismiss Plaintiff's Cross-claim.  Plaintiff opposes all Motions.

### III. Standard for Motion to Dismiss

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. <u>Evancho v. Fisher</u>, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.

Civ. P. 8(a)(2).  Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim. Bogosian v. Gulf Oil Corp., 562 F.2d 434, 446 (3d Cir. 1977).  However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1969 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail-in-the-coffin for the 'no set of facts' standard that applied to federal complaints before Twombly.").

Following the Twombly/Iqbal standard, the Third Circuit has instructed a two-part analysis in reviewing a complaint under

6

Rule 12(b)(6).  First, the factual and legal elements of a claim should be separated; a district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Fowler, 578 F.3d at 210 (citing Iqbal, 129 S. Ct. at 1950).  Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'"  Id. (quoting Iqbal, 129 S. Ct. at 1950).  A complaint must do more than allege the plaintiff's entitlement to relief. Id.; see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the "Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element").

   A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997).  The defendant bears the burden of showing that no claim has been presented. Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

**IV. Discussion**

Defendant Cornerstone contends Plaintiff's Complaint should be dismissed for failure to state a claim. Plaintiff alleges Defendant Cornerstone (1) conspired and aided and abetted E Defendants with their scheme to harm Plaintiff,[9] (2) participated in the creation of an equitable mortgage and (3) violated the Truth-in-Lending Act (hereinafter "TILA") as amended by the Home Ownership and Equity Protection Act (hereinafter "HOEPA"). In response, Defendant Cornerstone opines that the facts as alleged in Plaintiff's Complaint are insufficient to state a claim under the Twombly/Iqbal standard.

**A. Equitable Mortgage**

An equitable mortgage is a judicially created doctrine that arises when "a deed or contract, lacking the characteristics of a common law mortgage, is used for the purpose of pledging real property, or some interest therein, as security for a debt or obligation, and with the intention that it shall have effect as a mortgage, equity will give effect to the intention of the parties." Bank of New York v. Patel, No. F-3482-05, 2006 WL 337074, at * 2 (N.J. Super. Ct. Ch. Div. 2006) (quoting J.W.

---

[9] Plaintiff, in her Opposition brief, consents to dismissal without prejudice of this claim. The Court will, therefore, dismiss, without prejudice, Plaintiff's conspiracy and aiding and abetting claims, found in Count III of her Complaint, with respect to Defendant Cornerstone.

Pierson Co. v. Freeman, 113 N.J. Eq. 268, 271 (E & A 1933)). Among other circumstances, courts have imposed an equitable mortgage when the plaintiff, to avoid foreclosure, enters into a sale-leaseback agreement with a defendant. Johnson v. Novastar Mortg., Inc., 698 F. Supp.2d 463, 469-470 (D.N.J. 2010); *see* In re PCH Assocs., 949 F.2d 585, 600 (2nd Cir. 1991) (treating a sale-leaseback as an equitable mortgage).  To determine whether a transaction constitutes a sale-leaseback arrangement, and consequently an equitable mortgage, Courts in this district apply a multi-factor test.[10] Johnson, 698 F. Supp.2d at 469-470.  The determination of whether the parties' interactions created an equitable mortgage is not limited to the existence of an express contract. Id. at 470-71.  An equitable mortgage may arise between parties that did not have any direct interactions. Id.

Under the Twombly/Iqbal standard, the facts as pled in

---

[10]  These factors include "(1) Statements by the homeowner or representations by the purchaser indicating an intention that the homeowner continue ownership; (2) A substantial disparity between the value received by the homeowner and the actual value of the property; (3) Existence of an option to repurchase; (4) The homeowner's continued possession of the property; (5) The homeowner's continuing duty to bear ownership responsibilities, such as paying real estate taxes or performing property maintenance; (6) Disparity in bargaining power and sophistication, including the homeowner's lack of representation by counsel; (7) Evidence showing an irregular purchase process, including the fact that the property was not listed for sale or that the parties did not conduct an appraisal or investigate title; and (8) Financial distress of the homeowner, including the imminence of foreclosure and prior unsuccessful attempts to obtain loans." Johnson, 698 F. Supp.2d at 469-470 (citing In re O'Brien, 423 B.R. 477, 489-92 (Bankr. D.N.J. 2010)).

Plaintiff's Complaint are insufficient for the Court to conclude that Plaintiff has pled a plausible claim that an equitable mortgage arose between Plaintiff and Defendant Cornerstone. Although, applying the <u>Johnson v. Novastar Mortgage, Inc.</u> test, it appears Plaintiff has pled sufficient facts to assert the sale-leaseback arrangement was an equitable mortgage, the Complaint is void of any facts alleging the role and involvement of Defendant Cornerstone in the transaction.  As noted by Defendant Cornerstone, Plaintiff's Complaint makes "vague references to a 'loan'", but never avers the parties to the loan or who financed the loan. (Doc. 19, Def. Br. 9).  Plaintiff's sole allegation concerning why the Court should impose an equitable mortgage is that Defendant Cornerstone "was on notice by its own HUD1 and other documents accompanying the transaction" that it funded a foreclosure rescue transaction. (Doc. 1, Compl. ¶ 63).  This sole allegation for Defendant Cornerstone's liability fails to meet the <u>Twombly/Iqbal</u> threshold standard for pleading.  It is a bald legal conclusion unsupported by averments in the Complaint.  In her Opposition Brief Plaintiff attempts to cure this defect[11] or, alternatively, requests that "should the

---

[11] "It is well-settled . . . that [a party] may not amend [its pleadings] through arguments in [its] brief." <u>Sepracor Inc. v. Teva Pharm. USA, Inc.</u>, No. 09-1302, 2010 WL 2326262, at * 6 (D.N.J. June 7, 2010) (quoting <u>Francis v. Joint Force Headquarters Nat'l Guard</u>, No. 05-4882, 2009 WL 90396 (D.N.J. Jan. 12, 2009)); see e.g., <u>Bermingham v. Sony Corp. of America, Inc.</u>, 820 F. Supp. 834, 862 (D.N.J. 1992) (rejecting a plaintiff's

Court grant Cornerstone's motion . . . that it be without prejudice." (Doc. 26, Pl. Br. 2). The Court will dismiss, without prejudice, Plaintiff's equitable relief claim, Count IV. The Court will grant Plaintiff leave to, within thirty days of entry of the Order accompanying this Opinion, file an Amended Complaint to cure the pleading defects relating to Defendant Cornerstone.

### B. TILA and HOEPA Claim

The validity of Plaintiff's TILA and HOEPA claims depend on whether she was a "consumer" of credit. Johnson, 698 F. Supp.2d at 468. The statute defines a consumer credit transaction as:

> The adjective "consumer", used with reference to a credit transaction, characterizes the transaction as one in which the party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes.

15 U.S.C. § 1602(h). An injury only occurs under this statute when the plaintiff is "doing business with Defendant." Johnson, 698 F. Supp. 2d at 468 (quoting Talley v. Deutsche Bank Trust

---

attempt to amend her brief through her opposition brief). If Plaintiff desired to amend her Complaint, she should have done so through Fed. R. Civ. P. 15, not her opposition brief. *See* Surgick v. Cirella, No. 09-3807, 2010 WL 2539418, at * 4 n. 8 (D.N.J. June 15, 2010) (noting that insufficiencies in a claim are not cured by a brief, rather the "mechanism for curing pleading deficiencies" is to file a formal motion to amend pursuant to Fed. R. Civ. P. 15).

Co., No. 07-4984, 2008 WL 4606302, at *2 (D.N.J. Oct. 15, 2008)). To determine whether a plaintiff and defendant were doing business, courts scrutinize their transactions.  One indication of whether the parties were doing business is the existence of an equitable mortgage. Id.  Because the Court will permit Plaintiff leave to file an amended complaint with respect to her equitable mortgage claim, the Court will deny, without prejudice, Defendant Cornerstone's Motion to Dismiss Plaintiff's TILA and HOEPA claims.  If Plaintiff fails to amend her Complaint within the applicable time, Defendant Cornerstone may renew its Motion to Dismiss Plaintiff's TILA and HOEPA claims.

### C. Plaintiff's Cross-claim

In her Amended Answer to E Defendants' Counterclaims, Plaintiff asserts a Cross-claim that seeks indemnity and contribution against all Defendants.  Defendants contend the Cross-claim should be stricken or dismissed because it is untimely, incorrectly pled and fails to state a claim.  The Court will address the merits of the claim.[12]  Plaintiff's Cross-claim fails to state a claim for which relief can be granted and will be dismissed.  Although cross-claims for indemnity and contribution do not need to contain "detailed factual allegations," they must allege "sufficient facts to raise" a

---

[12] The Court will assume, without deciding, Plaintiff's Cross-claim is both timely and properly pled.

plaintiff's "right to relief above the speculative level." Standard Fire Ins. Co. v. MTU Detroit Diesel, Inc., No. 07-3827, 2010 WL 1379751, at *5 (D.N.J. March 30, 2010) (quoting Twombly, 550 U.S. at 555). A mere "formulaic recitation of the elements" is insufficient. Id. Indemnification and contribution claims must contain allegations averring how or why the defendants were negligent and partially liable. Id. at 5-6.

In the present matter, while Plaintiff claims she is entitled to contribution and indemnification, she does not allege any facts that explain why she is entitled to that relief. Plaintiff's Cross-claim states:

> If the Defendant E-Properties [sic] sustained damages in the manner alleged, and if it is found that plaintiff is liable to said defendant, then Plaintiff is entitled to indemnification and/or contribution and judgment against all defendants for all or part of any judgment Defendant E-Properties [sic] may recover against Plaintiff

Doc. 30, Cross-cl. 7. Under Twomby, this pleading is insufficient. *See* MTU Detroit Diesel, Inc., 2010 WL 1379751, at *5-6 (finding plaintiff's proposed crossclaim as insufficient under Twombly because plaintiff merely recited the elements of indemnification and did not plead any facts regarding why it is entitled to relief). In asserting her Cross-claim, Plaintiff cannot rely upon mere legal conclusions. She must allege facts that indicate why she is entitled to indemnification or

13

contribution. Plaintiff's Cross-claim does not include any averments detailing how or why Defendants are jointly liable for E-Defendants counterclaims. Nor does it even identify any theory for why Plaintiff is entitled to indemnification or contribution. The Cross-claim only contains conclusory allegations asserting that Defendants are somehow partially liable. Furthermore, the claim is additionally deficient because Plaintiff does not differentiate any potential liability among Defendants or identify why or which Defendants would be partially responsible as joint tortfeasors. The Court will, therefore, dismiss Plaintiff's Cross-claim.[13]

## V. CONCLUSION

Based on the foregoing, Defendant Cornerstone's Motion to Dismiss Plaintiff's Complaint [Doc. 19] will be granted in part and denied in part and Defendants' Motions to Dismiss Plaintiff's Cross-claim [Docs. 31 & 32] will be granted. Plaintiff's Conspiracy, Aiding and Abetting and Equitable Relief claims, with respect to Defendant Cornerstone, will be dismissed without prejudice. With respect to Plaintiff's Truth-in-Lending Act and Equity Protection Act claims, Defendant Cornerstone's Motion will be denied without prejudice. Plaintiff will be granted leave to

---

[13] Despite E Defendants request, the Court will not award attorneys' fees. Besides a sentence in their brief, E Defendants do not cite the Court to any authority indicating they are entitled to attorneys' fees.

file an Amended Complaint with respect to her Equitable Relief claim within thirty (30) days of the entry of the Order accompanying this Opinion.

An appropriate Order will be entered.


Date: February 16, 2011                s/ Noel L. Hillman
At Camden, New Jersey                  NOEL L. HILLMAN, U.S.D.J.